The final case scheduled for oral argument this morning is number 20-2186, Aponte v. Perez. Mr. Subramanian. Thank you, Your Honor, and may it please the court. My name is Arun Subramanian from Sussman Godfrey, and I represent the plaintiff appellant, Felix Aponte. The judgment of the district court should be reversed for three principal reasons. First, it is undisputed that Mr. Aponte was illegally jailed and deprived of his liberty for at least two weeks in 2008. In the face of that violation, the district court's unprecedented holding that Mr. Aponte is owed no damages as a matter of law flies in the face of this court's decision in Kerman v. City of New York, which made clear that where the plaintiff was indisputably deprived of his liberty and the conduct of the defendant responsible for the deprivation was found to be unlawful, the plaintiff is entitled to compensatory and not merely nominal damages. Now, what's really baffling is that the district court recognized this principle and actually denied summary judgment to the police on the question of damages. That's at special appendix page 50 to 51. But one month later, that is precisely what the district court decided to do in an unprecedented post-summary judgment order without even citing Kerman. But it doesn't stop there. Second, the district court erroneously held that the actionable period of time when Mr. Aponte was illegally jailed was just two weeks. Now we're here on summary judgment. Let me just interrupt for a minute. I have to confess I found the fact situation here somewhat confusing. I understood the district court to look for a showing of actual damages for what he understood to be the two-week June imprisonment and had no evidence before him. And also he pointed to a docket entry of some kind that suggested that continued confinement until July 3rd was contemplated. And obviously this whole situation with post-release supervision, how you treat violations of that, who can impose what terms on post-release supervision has generated enormous both confusion and controversy for years now. So I understood him to be saying it was two weeks. It looked like he had violated terms of post-release supervision. In any event, a number of these defendants had no personal involvement. I've been presented with no evidence of actual damages. I'm not prepared to recognize a harm, maybe a due process harm, maybe false imprisonment harm, but I have nothing more to base damages award on and therefore I award $1. But I'm happy to have you set me straight about that narrative because I'm sure I've misunderstood. Yes. So first off, in the district court summary judgment order, the court found on liability in Mr. Aponte's favor. The defendants, now the appellees in this case, did not take the position that especially Mr. Fisher and Mr. Annuzzi were not personally involved in the violation. And they don't take a cross appeal from the judgment of liability in Mr. Aponte's favor. So on the question of liability, excuse me, liability due process violation for the two weeks. That's exactly right. On that question, there's no cross appeal. So the liability is in Mr. Aponte's favor. Just to like make sure that we're on the same page. So the only basis for the district court's decision was on the pure question of damages. Now, in response to what your honor said about not having evidence before him, there certainly was pleading and allegations from Mr. Aponte that he had been deprived of his Liberty. I mean, the deprivation of Liberty was just undisputed because he was in jail past the end date of his sentence. That was undisputed by the defendants. It is undisputed by the appellees on appeal. They don't argue. Let me see if I get this straight. Are you saying that it might be that there were no damages shown at all and that therefore even nominal damages should not be granted, but that once you say that there was a deprivation of Liberty, sufficient that nominal damages, that some damages, nominal damages are there, then under our cases, that becomes a question of a jury of how many there are and that we can't, that the problem is that the district court in a way tried to have it both ways. It said there are nominal damages, which if no damages were shown, there would be nothing. But if there was nominal damages, then the amount of damages under our cases where Liberty has been deprived is a jury question, especially in a case like this where punitive damages were also asked and you don't press punitive damages now, but who decides punitive damages? That's absolutely right. So on the question of the jury's province, Kerman itself made clear that once the violation is found and once a deprivation of Liberty is shown, it is the province of the jury to determine the nature and amount of the damages. And there was no question that there was a deprivation of Liberty precisely because Mr. Aponte had been held in prison too long. Now, Judge Carney, I want to get to the issue you raised of the The district court believed there may have been a basis to adjust the time period of Mr. Aponte's sentence on that basis. So two responses there. First of all, the post-release supervision violation would have been illegal under this court's precedence going back all the way to early. So that couldn't have been a basis to adjust the sentence and the appellees have never, never took the position in the trial court that Mr. Aponte's sentence had been adjusted to July 3rd. They always took the position that it had been adjusted to June 6th. But what was the basis for that conclusion? Because we're here on a motion for summary judgment. The question is whether there are genuine issues of material fact and there certainly are concerning the end date of Mr. Aponte's sentence. The only piece of evidence that the appellees pointed to was a declaration from Miss Christina Lennon. That's that joint appendix page 168 to 169. And that declaration is impermissible, cannot be considered on a motion for summary judgment under Rule 56 C4. If you look at the declaration, I would invite the court to take a look at it. It is deficient in every single respect. It is not made on personal knowledge. It does not provide any of the circumstances or explanation of how Mr. Aponte's sentence was adjusted. It doesn't even say Judge Carney that Mr. Adjusted on the basis of this alleged violation of his post-release supervision. It doesn't even say that. All it says is that Department of Corrections documents document that the end date was June 6, 2008. That's not admissible on any analysis. And if there were really documents that showed that Mr. Aponte's sentence had been adjusted, of course, the appellees would have put that into the record because they put every other record concerning Mr. Aponte's time in prison into the record. So, you know, there's just really no evidentiary basis to satisfy the appellees moving burden on summary judgment. And in that context, this case should have gone to a jury on the question of the proper end date. With regard to qualified immunity, though, there's such confusion about what the rules were, what the state was saying, what our cases were saying, the records run clear here as to exactly how to calculate the appropriate end date. Qualified immunity doesn't answer, doesn't kind of bring the litigation to a halt because of the confusion? Absolutely not. So the appellees are not even claiming qualified immunity for the period before the June 20, 2008 resentencing. So just to make sure that we're on the same page. Everyone's on the same page that Mr. Aponte was held past the end date of his sentence up to the date of this resentencing. So the June 6 to June 20, everyone agrees? Everyone agrees on that. And just to be clear, we believe that the actual end date of his sentence was February 13, 2008. And so there was a longer period of an agreed violation of his rights. They're not arguing that that period of time is covered by qualified immunity. You're saying at least the question between February 6th and June is uncertain enough so that it couldn't be decided at summary judgment. Absolutely. But on the question of qualified immunity, this court has made clear that as early as the decision in Early, the law was clearly established that the imposition of administrative post-release supervision was illegal. So that's why appellees are not arguing qualified immunity for that time. They can argue qualified immunity as to the effect of the second sentence, which may have been, was, held to be invalid, but as to that they had qualified immunity. That's their argument under this court's decision on Hasselby Fisher. I agree with you, Your Honor. Can you help me understand one thing? There seems to be a distinction between sort of a substantive due process claim and a procedural due process claim. And I'm trying to understand, is the claim that you're making that the harm arose from failure to hold some hearing or did the harm arise from detaining him? That is an excellent question. The harm comes from the illegal imposition of punishment from the detainment. There is no hearing that the appellees could have provided and the Southern District in the Betances case made that point very clear. They couldn't have provided a hearing and then impose the punishment that they did. So that's not the violation. That's why this case is different from cases like Warren v. Pataki that are cited by the appellees. It's that they illegally punished my client. They kept him in jail and illegally jailed him. And that obviously under Kerman results in compensatory damages. I would actually, I mean, just to take a step back. I think that there's a fundamental misunderstanding in the appellees pleading, at least, that this is kind of a conventional procedural due process claim. And I understand that the court in Eerly surmised that it was a kind of a brand of procedural due process. But I actually believe it's more of a substantive due process violation because once you illegally impose punishment on an individual, that is a violation of their fundamental rights. That is a substantive due process violation. Now, there's one thing that is puzzling or troubling me. Another case, Vincent v. Iannucci, was argued on January 20th and will have precedence over us. Have you followed that case? You see what is being argued there and whether we are, whether something in that case may affect what we can do now? Well, I certainly, the decision hasn't issued, so I don't think that there's anything in particular in that decision that would affect. But it hasn't come down. Right, but I do think that for a couple of reasons, I think it's unlikely that it will affect this court's disposition. First of all, on the core question of the amount of time that Mr. Raponte was illegally jailed and the fact that under Kerman, he would be entitled to compensatory damages. Those are issues that are unique to this case. Those are not kind of broad issues that would affect the number of different individuals out there in the world. The district court, after recognizing that Kerman would have allowed for damages, the court then did this about-face after the summary judgment ruling. But those are all issues particular to this particular case and the another case anywhere where an individual was held in prison past the end date of his sentence. And just to be very- I do have one other thing. In that case, the party, the plaintiff seeking damages, was counseled. And in this case, the plaintiff was not. Does that affect any of the standard of how much we ask of a plaintiff to show before determining that they haven't shown any more than nominal damages? Well, absolutely. In the trial, when there's a pro se plaintiff, the district court recognized that he should be given the benefit of the doubt on his allegations. In fact, Judge Carney, to go back to an earlier question, when the he had asked for a submission from Mr. Aponte concerning the nature of the damages that he had suffered, that submission came in one day after the judgment had actually been entered. But the district court considered it on the merits and simply discounted the allegations that Mr. Aponte had made of the deprivation of liberty, as well as pain and suffering and mental anguish. But it was not the judge's call to judge the credibility of those concerns. These are quintessential jury issues. The jury should have determined and the evidence would have been Mr. Aponte's testimony. He would have come in and testified as to what happened to him during the period of time that's at issue. We say it's months and months and not just a couple of weeks. Thank you very much. You've reserved two minutes for rebuttal. We'll hear from Mr. Del Pozo. Good morning. May it please the court. Eric Del Pozo for Eppley's current and former New York State prison and parole officials. The judgment for nominal damages should be affirmed. A lot of how the district court proceeded here was based on- Could you talk more slowly, please? A little bit less fast. Thank you. Of course, your honor. A lot of how the district court proceeded here was based on the total failure of proof by Mr. Aponte, the party with the burden at the various stages of litigation. And in my presentation, I will try to address some of the questions that your honors have already raised. So, as a matter of law, liability was properly cut off as of the June 20th, 2008, resentencing. I didn't just hear my adversary argue otherwise, but under hassle, the defendants are entitled to qualified immunity for that period, both because the resentencing referral predated people v. Williams, the first case to hold such a referral or such a resentencing to be unlawful, and because the post-release supervision after- Nobody's arguing now, they did in their brief, that June 20th wasn't the cutoff date, whether it was because the resentencing, even if improper, was a supervening cause or because of qualified immunity. So, let's leave that aside. But there seems to be no argument that June 6th is at least the date. There's an argument as whatever it was before, but you have conceded throughout the argument, throughout this whole thing, that the time between June 6th and June 20th was a violation of this person's due process. Now, whether it was also a violation of false imprisonment, whether it was longer, all those are other issues. But for that two-week period, you have throughout conceded that there was an illegal holding. Isn't that so? That's right. Judge Calabresi, for just that period, June 6th through June 20th, 2008, and this was a procedural due process violation, to be clear. Well, it's not a procedural due process violation. Procedural due process violation is, did you get enough this, that, or the other? This person was jailed improperly during that time, is what you've conceded. And the question is, if that is so, are there damages under our cases that must be decided by a jury, especially when punitive damages are asked for, and your client intentionally, intentionally for two years, did not follow our decision in early, and did not follow it until the state court came with the same thing? There's no question, I think, on this record that this was an intentional decision. Now, in those circumstances, are some damages available? Nominal damages are available only as a matter of law because the plaintiff was eventually re-sentenced, albeit- But don't we have cases that where somebody was held illegally, the amount of damages is a question for the jury? Well, Judge Calabresi, let me back up a little bit and dispute a couple of the premises in your prior question. This court in Subler against City of New York said in no uncertain terms that a claim under early for DOCS officials not following a sentencing judge's order sounds in procedural due process. The court said the same thing in Vincent against Yellich from 2013, and inferred as much or suggested as much in early in talking about procedural requirements and sentencing. And so that is number one. Number two, we think there was no basis on this record for a trial on punitive damages for a couple of reasons. First, all that the prior cases have held was that DOCS acted unreasonably, and we concede that DOCS did act unreasonably as this court has held, too slowly, not callously, willfully, or intentionally. All that Mr. Raponte has offered in his scant submissions in this case is a bare request for punitive damages. Just saying- He was not represented throughout most of this time. He was incarcerated, and he had no easy access to making the presentations that you're faulting him for not making. I don't understand why that is a fair position to adopt. Well, Judge Kearney, Judge Karaspolo gave Mr. Raponte the benefit of the doubt in several instances because of his pro se status. One, the judge, as is required under this court's case law, scrutinized the record, didn't just accept our submissions at face value, scrutinized those for evidentiary support. Number two, excused Mr. Raponte's default at the summary judgment stage, a clear and total default, and gave him an additional chance to submit- Yes, of course. There's no doubt that Judge Karasp gave him the benefit of a doubt as to some things, but that's not the issue. The question is, on this point, was he given the benefit of the doubt that we give? On the points that you're not arguing, fine, but on this, on the question of damages and assessment of the statement about punitive damages, things of that sort, was he treated the way we treat pro ses? Well, there would be no punitive damages available. It is our position, as a matter of law in these cases, because of DOCS's lack of intentional or willful conduct. Why? Why? Why? Now, look, let's assume for the moment that the defendants in this case intentionally chose not to follow federal law, and the result of that was that this person was incarcerated improperly for a certain period of time. If we assume that, isn't that a basis on which a jury could grant punitive damages? Well, I think we should assume- If there was a willful failure to follow a clear statement of law by our court? A willful failure to respect federal rights can be a basis for punitive damages. Yes, Judge Calabresi, that is the standard, but I would urge the court to look at the factual record here. Mr. Raponte was one of the very first wave of offenders to be referred for resentencing. That referral came before the end of his recalculated determinate term. Okay. Okay. But isn't that at most all a question that can't be decided at summary judgment? We don't think so. Is this a question of fact, then, that would have to go beyond- Not on the undisputed facts. No, we think that this is an appropriate exercise of summary judgment. The undisputed facts are that these people were doing their best to follow federal law? No, we can see that the defendants unreasonably delayed in referring not just this particular offender, but all of the offenders who had been serving terms of unpronounced PRS for resentencing. So that is settled. But that is mere, if you will, negligence, not recklessness, especially given the tremendous nature of the undertaking of resentencing. Again, it may be that it was sheer negligence, or it may not be. And if it was negligence, then the question of what damages follow from negligence. But how can you say that those are questions that are so clear on this record that they can be decided at summary judgment? Well, Judge Calabresi, I believe you have my argument on that point. I would point again to those three things that I've already mentioned. The bare request for punitive damages, no factual adornment, even with the solicitude that Judge Karras allowed Mr. Raponte given his pro se status. No, if your argument had merit, then I would think you would be able to argue qualified immunity. That is, if it was sufficiently uncertain, then qualified immunity would be there. But that qualified immunity is not argued. It isn't even mentioned with respect to this time, or was rejected previously by our court. That's right, Judge Calabresi. After June 20th was in. That's right, Judge Calabresi. But a lot of the same arguments that went towards qualified immunity that are mentioned in this court's prior decisions do inform and the court can take judicial notice of what's stated in those decisions clearly. And they do inform the lack of entitlement to punitive damages here as a matter of law, including that many state judges and prosecutors resisted early holding, probably unreasonably on their own part, but they did. And that these were violent felony offenders, some of the worst and most dangerous in New York State, and docks had other public safety concerns. We know now that those couldn't have overrided their duty to comply with just the order of the sentence. I asked the other side to address whether the Vincent vs. Iannucci case might have precedence over us. Are you aware of that case? I am, Judge Calabresi. That was argued by my colleague out of the Albany office. There is some overlap in the issues that the issue on appeal there was whether, much like here to some extent, there could be an award of punitive, or not punitive, presumed damages for loss of liberty for unlawful PRS in the absence of a showing of actual causation or damages. This case is distinct, though, from Vincent in that here there was, we know what happened when proper procedures were provided, albeit unreasonably delayed. The plaintiff was resentenced to a non-proton to a sentence, the same eight-year determinate term with a period of PRS. That was not a fact in Vincent. In Vincent, there was no resentencing at all, and the offender was in prison for most of the time of his unlawful PRS, eventually was released on a state habeas corpus grant. And so these two cases are distinct. There is some overlap, but we feel that the damages issue here can be affirmed on the narrower ground of the sentencing. Can I ask, you've engaged with my colleague a lot about punitive damages and whether or not the record could support an award for the jury to consider. I'm puzzled why we're skipping over compensatory damages in light of Kerman. I gather your position is that if somebody locks me up right now with no legal entitlement to do so, and they do so for two weeks, that I'm not entitled to anything but nominal $1 damages unless I affirmatively produce what? Evidence that it caused me distress or evidence that I lost wages because I couldn't... I don't understand why you don't get to the jury under Kerman for the fact of the detainment in and of itself. Well, I have several responses to that, Judge Robinson. The first is that this court in Warren against Pataki, a procedural due process claim involving civil confinement, expressly distinguished Kerman and limited that case to what I'll call cases of pure false imprisonment where there's no legal basis whatsoever for the confinement. But here, it's not... But that really was a procedural due process claim, right? There was a hearing mechanism and then once he had it, he got... this wasn't some hearing that the prison was supposed to go through before they imprisoned him beyond the termination of his adjudicated sentence. They just did it. It is a procedural due process claim as this court has recited previously in prior cases, but of a different sort. And that is that, as stated in Vincent Imbotensis, DOCS officials, given their limited authority over sentencing, had an obligation to at least do something and that something could have been a referral for sentencing to PRS. And so those were the procedures that DOCS did not provide now, having unreasonable... Counsel, could you explain to me what the procedural error that you say was here as against the substantive one? I mean, what is the procedural mistake? Was it that he wasn't re-sentenced? Because that can't be right because the re-sentence violated double jeopardy. So, substantively, the re-sentence can't have been simply a procedural error. So what was the procedural error? That the man wasn't sentenced in the first place? There were two procedural errors of note, Judge Calabresi. The first was the sentencing judge in 2000, when first imposing the sentence, not pronouncing the term of PRS. No, but you see, that's not a procedural error. That's what the sentence was. The fact that later, administratively, he was done that. But the sentence was the sentence that was given. Maybe the judge should have given a different sentence as a matter of law. But how is that a procedural error in the sense that some other procedure would have accomplished it? Well, the second procedural error, and the one that is probably more directly relevant here, is Dox is waiting too long to perform the procedure of referring this offender for his re-sentencing. Now, yes— Well, but the re-sentencing itself turns out to have been illegal because it was double jeopardy under New York law. So the delay in doing something, which there's qualified immunity for and all of that, but that doesn't change the fact that the re-sentencing is improper. So a delay to do something which you couldn't do anyway cannot be a procedural error. Well, Judge Calabresi, the re-sentencing ended up improper only because of the delay. It would have been— No, the fact that the re-sentencing— The fact that the re-sentencing turned out to be improper may protect you from having acted under it because you had a right to assume that it was proper. But it doesn't change the fact that the re-sentencing was not proper, and therefore a delay to getting to it cannot be simply a procedural delay,  Well, we can't just look at the end result of what happened because of the delay and its implications under New York law to assume that an earlier re-sentencing with PRS wouldn't have been proper and valid, which it wouldn't have, Judge. Counsel, we have to look at what happened to this person. And if this person was improperly put to jail because he wasn't sentenced in a way that allowed him to be put in jail and because he couldn't have been re-sentenced in a way that allowed him to be put in jail, that is a deprivation of liberty. Well, we're— You don't call it care if you call it Thucydides or if you call it mustard plaster. It still is a deprivation of liberty. Yes, Judge. If there's a deprivation of liberty, are there damages that flow from it? There are. If there's a due process violation, there are damages at minimum nominal damages if no damages are shown. So that gets back to a question that you asked my adversary, and that's under cases like Kerry against Pifus. And here, given the lack of proof of actual damages, nominal damages, especially given the re-sentencing, we know what would have happened, albeit it was too late. And void for a separate double jeopardy reason, we know what would have happened. The only rational inference is that that same re-sentencing would have occurred if defendants had acted properly. I see my time is up. I'd like to finish answering a question of Judge Robinson's, if I could, about the distinction. Take a moment longer. Take a moment longer, sure. Thank you, Judge Kearney. The real way to highlight the distinction between this type of case and Kerman is to look at what happened in those two cases. In Kerman, the jury awarded $1 for an unlawful civil mental health confinement, and this court held, well, that might have been appropriate, or okay at least, for mental and emotional damages, but we need to send this back for another trial on loss of liberty. In Warren against Pataki, which I know that Judge Kearney is familiar with. She was on that panel. The court, the jury awarded $1 for unlawful civil confinement without procedural due process, and that was a pre-deprivation hearing, and this court held that that verdict, sustained the verdict, or upheld the verdict as reasonable, but also held that no further damages would be available for loss of liberty even under a false imprisonment theory, which Judge Rakoff had thrown out. And just looking at the results of those two different cases shows, and we are in the Warren bucket, to be clear, and not the Kerman bucket. Yeah, but I don't understand that, Mr. Loposo, because the claim in Warren was you confine me without the process that I'm supposed to get before that confinement. This was not that. This was you confine me with no legal authority whatsoever without even a process that you could have gone through to justify Warren confining me. And so I don't understand how this is in the Warren bucket rather than in the Kerman bucket. Well, the process that would have sanctioned all of this would have been a prompt for sentencing at which the Sentencing Court would have imposed the mandatory five-year term of PRS. So this isn't a case, like, say, a false arrest case with absolutely no probable cause for the arrest. No institutional actor could have effectuated that arrest legally. Here it was the legally mandatory PRS termed from an impermissible actor and an impermissible procedural delay in fixing that result. But that delay wasn't his problem. He wasn't upset about the delay. He wasn't going to court saying, hey, I want my resentencing so that I can get an additional PRS term. He was saying my sentence is over and you still held me. The procedural breakdown was the defendant's internal problem that led to the result, but it's not the gravamen of his complaint. Yes, Your Honor, and for that reason, as we must, we concede due process liability, but for all of the reasons that I've given here and everything in our brief, damages present a separate question. All right. Thank you. Thank you very much. Mr. Subramanian, you have two minutes rebuttal. Thank you, Your Honor. My colleague referred to Warren v. Pataki and Kerry v. Pythas and for all the reasons that Your Honors have mentioned, we don't think those cases are applicable. But importantly, remember that even in Warren v. Pataki, the case went to a jury for the jury to determine whether compensatory or nominal damages were due. In Kerman, the case went to a jury and the jury determined the amount and nature of the damages that should be owed. So even if everything that my colleague said was correct and this was potentially a nominal damages case, that was for the jury to decide and not for the court in the first instance. So I just want to make that point clear. There's no way this case shouldn't have gone to a jury. Judge Calabresi, when we started my colleague's argument, you had mentioned that it might be undisputed that there's a cutoff here on the June 20, 2008 resentencing. That is not the case. There is not agreement on that point. And so I want to just spend a few seconds on that issue. First of all, the resentencing happened on June 20, 2008. As we pointed out on our papers, Mr. Aponte was actually not released on that date, even though the sentencing court said that he had to be released forthwith because everyone understood at that point they had been holding Mr. Aponte illegally in jail past the end date of his sentence. Inexplicably, and there's no explanation in Apelli's papers, they held Mr. Aponte in jail for an additional six days. That's at joint appendix page 164 and 165. You can see the movement of the records. There is no explanation for this. The resentencing order absolutely does not shield them for that period of time. What happens after June 26? He's not released into the community. Instead, he's put into a residential treatment facility illegally, again, because the only way he could have been put in that residential treatment facility is if it was immediately upon the expiration of his underlying term of imprisonment. It's undisputed that that term of imprisonment had finished at least weeks earlier. At least for that period of time after the resentencing, there's not a claim for qualified immunity that the Apellis can assert. In the end, all of these are things which if one sent it to the jury to determine damages, would be relevant in terms of the extent of deprivation of liberty that was given. To some extent, what is before us is no more than is there a question that should have gone to a jury as to the amount of damages? Then, what that is and what is, in fact, in dispute or not, might well be tried out at that time. That is absolutely correct. I hate to keep lingering on these particular unique facts of this case, but I think it really points up the egregiousness of the violation. Even after... Hassel made clear that the law was clearly established at least as of the date of People v. Williams, February of 2010. Even after that date, the Apellis continued to hold Mr. Aponte in jail for alleged violations of this post-release supervision that, as Your Honor pointed out, was unconstitutional under the Double Jeopardy Clause. Why did they do that? Why didn't they release him or refer him immediately to the district attorney for prosecution if they wanted to hold him in jail? That is not shielded by qualified immunity. The resentencing order didn't give them leave to do it because it was their policy... The Hassel case makes life very difficult for you on those points. Hassel is different than this case, Your Honor, for this key fact. In Hassel, the individual, the plaintiff, had not been incarcerated at the discretion of the parole board for violating his post-release supervision. So in that case, it may have been true that the resentencing order had broke the chain of causation. Again, this is a factual question, to Your Honor's point. In this case, the parole board made the decision themselves. All I said is it makes it very difficult for you. They didn't say it made it impossible. And if I could just end on the point that some of Your Honors had raised about the pro se status of the plaintiff and the special solicitude for the pro se plaintiff, I just want to make clear, I am prepared to try this case for Mr. Raponte because liberty is a foundational freedom that's guaranteed by the Constitution.  the end. A jury of Mr. Raponte's peers and not a judge should be able to decide for itself on a full record how much months and months of freedom, which were taken away from Mr. Raponte, are worth. And I would respectfully submit to this court that it's more than $1. Thank you, Mr. Subramanian. Thank you for your efforts on this case. I know you were appointed relatively recently, so we appreciate that. Thank you both for your arguments. We will reserve decision. This concludes our calendar hearing this morning. For oral argument, the clerk will please adjourn court. Thank you. Thank you.